Case 2:24-cv-00205   Document 52   Filed on 08/29/25 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
August 29, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| KAYODE YAYA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:24-CV-00205 |
| | § | |
| DRISCOLL CHILDREN'S HOSPITAL, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

In September 2024, Plaintiff Kayode Yaya, proceeding *pro se* and *in forma pauperis*, filed this employment discrimination suit against Defendant Driscoll Children's Hospital ("Driscoll"). (D.E. 1). In an amended complaint, Yaya raises claims under Title VII of the Civil Rights Act of 1964, the Texas Labor Code, the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), the Equal Pay Act ("EPA"), the Fair Labor Standards Act ("FLSA"), and 42 U.S.C. § 1981a. (D.E. 27). Currently pending are Driscoll's motion to dismiss for failure to state a claim (D.E. 31) and motion for summary judgment (D.E. 34), to which Yaya has responded (D.E. 38). Yaya has also filed a motion for summary judgment (D.E. 46, 47), which has been stayed pending the resolution of Driscoll's motions (D.E. 51).

For the reasons discussed further below, it is recommended that Driscoll's motion for summary judgment (D.E. 34) be **GRANTED** but its request for an award of attorney's

fees be **DENIED**, Driscoll's motion to dismiss (D.E. 31) be **DENIED as moot**, and Yaya's motion for summary judgment (D.E. 46) be **DENIED as moot**.

## I. BACKGROUND

### a. Allegations

In his amended complaint, Yaya alleges the following. (D.E. 27). He is a black African from Nigeria and former employee of Driscoll, beginning in September 2020. (*Id.* at 4, 6). Beginning around March 2021, his working environment became hostile, and he was discriminated against based on his race and national origin. (*Id.* at 7). Over the next approximately 34 months, Yaya continued to suffer from discrimination, harassment, and retaliation on the basis of race, national origin, sex, religion, disability, and age. (*Id.* at 7-29). Driscoll also violated the FMLA and FLSA. (*Id.* at 9, 15, 18-19, 21-22). On January 4, 2024, under the impression that he was about to be terminated, Yaya resigned from his position with Driscoll. (*Id.* at 30). He then attempted to rescind this resignation and suggested other solutions, but Driscoll nonetheless accepted the resignation on January 8, 2024, and constructively discharged Yaya. (*Id.* at 30-31).

Yaya raises four causes of action, including: (1) race discrimination; (2) retaliation; (3) harassment based on his race in violation of 42 U.S.C. § 1981; and (4) a hostile work environment based on his race in violation of § 1981. (*Id.* at 32-34). He seeks damages, injunctive relief, and back and front pay. (*Id.* at 34-36).

Yaya attached copies of his EEOC charges to his original complaint. (D.E. 1-1 at 9-13). The EEOC provided Yaya with Notices of Right to Sue on June 5, 2024, and August 19, 2024. (*Id.* at 1-6).

b. *Submitted Evidence*

On June 11, 2024, Samantha Koempel, acting as counsel for Yaya, emailed Amber Dodds, acting as counsel for Driscoll, and informed her that Yaya had retained her firm after receiving his notice of right to sue from the EEOC. (D.E. 34-1 at 12). Yaya was seeking a resolution of the case before litigation. (*Id.*). Koempel noted that they would be pursuing all claims from the EEOC charge, race discrimination claims under § 1981, and FMLA claims. (*Id.* at 13). She indicated that Yaya would settle all claims in exchange for $90,000. (*Id.*). Dodds confirmed receipt of the email that day. (*Id.* at 12).

On June 21, 2024, having received no response, Koempel followed up with Dodds and asked what Driscoll's response to the offer was. (*Id.* at 11). Dodds noted that Yaya had another pending EEOC charge, and that Driscoll was focusing on it. (*Id.*).

On July 17, 2024, Koempel again followed up, stating that it was her understanding that Driscoll had responded to the second EEOC charge. (*Id.* at 10). She offered a reduced settlement amount of $85,000, with a deadline of July 22, 2024, for a response. (*Id.*).

On July 23, 2024, Dodds responded with a counteroffer, stating that Driscoll denied all wrongdoing and was not interested in negotiating on Yaya's claims. (*Id.* at 9). Accordingly, Driscoll offered him a severance payment of one month's salary, which equaled $4,841.20. In return, Yaya would have to sign a separation agreement releasing

3

all claims and withdraw his EEOC charge. On August 5, 2024, Koempel rejected this offer, countering at $70,000, and noting that she had more room to move, but would have to see significant interest in resolving the case from Driscoll. (*Id.*).

On August 15, 2024, having received no response from Driscoll and with the deadline to file a complaint approaching, Koempel again followed up and requested a response by the next day. (*Id.* at 8). On August 20, 2024, still having received no response, Koempel indicated that Yaya would settle the case for $47,500, but Driscoll would have to accept by the next day. (*Id.*). She further noted that Yaya had received his second notice of right to sue from the EEOC, so his claims were ripe for litigation. (*Id.* at 7). On the morning of August 22, 2024, Koempel again asked what Driscoll's response was and inquired whether Dodds still represented them. (*Id.*). Dodds responded that she still represented Driscoll, and their offer remained the same: a severance payment of $4,841.20. (*Id.* at 6). She noted that she had conveyed the $47,500 offer to Driscoll, but did not think they would be interested. (*Id.*).

On August 30, 2024, Koempel stated that, "[w]hile it is not our recommendation," Yaya had elected to accept the offer for $4,841.20. (*Id.* at 5). He wanted the settlement draft to include a neutral reference provision and a payment window of no more than 10 days. (*Id.*). Koempel further included directions of how to apportion the settlement payment, where to send it, and what form they preferred the settlement draft to be in. (*Id.* at 5-6). On September 1, 2024, Dodds confirmed that Driscoll accepted these terms and

4

would prepare the separation agreement.  (*Id.* at 4).  On September 3, 2024, Koempel thanked her for the update.  (*Id.*).

On September 4, 2024, Dodds emailed Koempel regarding signing the agreement.  (*Id.*).  The next day, she sent a copy of the agreement to Koempel to provide to Yaya and discussed the process for electronic signing.  (*Id.* at 3).

On September 11, 2024, Yaya emailed Dodds directly, asking for her address to deliver a complaint to her, and telling her to "[c]onsider reaching out to me directly regarding this matter."  (D.E. 34-2 at 2).

On September 13, 2024, having received no response from Koempel, Dodds followed up.  (D.E. 34-1 at 2-3).  Later that day, Koempel responded that they no longer represented Yaya and provided his contact information.  (*Id.* at 2).

On September 19, 2024, Dodds stated that the emails were an enforceable agreement between Yaya and Driscoll, and that despite this written agreement to resolve the claims, Driscoll received a request to waive service from Yaya on September 5, 2024, after the agreement was made.  (D.E. 34-1 at 2).  Dodds stated that Yaya had breached the agreement.  (*Id.*).

On October 11, 2024, Dodds emailed Yaya, indicating that it was her understanding that he now represented himself.  (D.E. 34-2 at 2).  Among other issues, Dodds stated that Driscoll had an enforceable settlement agreement with him to resolve all claims that was made before he filed his lawsuit.  She inquired why he had filed the lawsuit anyway.  (*Id.*).  Yaya did not respond.  (*See id.*; D.E. 34 at 4).

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1017–18 (5th Cir. 2021) (quoting Fed. R. Civ. P. 56(a)). The moving party bears the initial burden of identifying the portions of the record it believes shows the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this requirement, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that" a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citing *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The nonmoving party "must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brush v. Wells Fargo Bank, N.A.*, 911 F. Supp. 2d 445, 457 (S.D. Tex. 2012) (Rosenthal, C.J.) (citing *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007)).

"A fact is 'material' if its resolution in favor of" a party could affect the lawsuit's outcome. *Hamilton*, 232 F.3d at 477. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* The showing of a genuine issue is not satisfied by conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Factual controversies are resolved in favor of the nonmoving party; however, there must be an actual controversy—both parties must have submitted evidence of contradictory facts. *Id.*

6

Without proof, a court will not "assume that the nonmoving party could or would prove the necessary facts." *Id.* (emphasis omitted). If the record does not allow for "a rational trier of fact to find for the non-moving party, there is no genuine issue for trial[,]" and summary judgment must be granted. *See Brush*, 911 F. Supp. 2d at 457 (internal quotations omitted).

Courts have determined that the summary judgment procedure is a proper way to seek enforcement of a preexisting settlement agreement. *See, e.g., Simon v. Barrett Steel Energy Prods., Inc.*, No. CV H-17-3831, 2018 WL 2010300, at *2 (S.D. Tex. Apr. 30, 2018) (granting summary judgment and dismissing Plaintiff's claims with prejudice based on the existence of a valid and enforceable settlement agreement between the parties).

### III.　DISCUSSION

*a.　Settlement Agreement*

In the motion for summary judgment, Driscoll argues that Yaya entered into an enforceable settlement agreement to release all claims against Driscoll in exchange for $4,841.20. (D.E. 34 at 6). Driscoll contends that this agreement was clearly entered into by both parties and included all material terms, namely a settlement amount and the claims that Yaya would release. (*Id.*). Driscoll asserts that the agreement did not have to be reduced to writing before being enforceable, and there were no conditions precedent to contract formation. (*Id.* at 6-7).

Liberally construed, Yaya responds that no settlement agreement exists. (D.E. 38 at 7). Alternatively, he argues that, if such an agreement does exist, it is unenforceable

because: (1) it lacks consideration or other terms required for enforceability; or (2) it was obtained through coercion, duress, or misrepresentation by Driscoll. (*Id.*). While arguing for equitable tolling in relation to Driscoll's motion to dismiss, Yaya contends that Driscoll deliberately delayed "in responding to Plaintiff's reasonable settlement demands." (*Id.* at 13).

Driscoll replies that Yaya has provided no basis for the Court to determine that the settlement agreement is unenforceable. (D.E. 40 at 3). Driscoll argues that Yaya has made only conclusory statements that the agreement was unenforceable without citing or providing any evidence in support. (*Id.* at 3-4). Driscoll further reiterates that it was entitled to rely on Koempel's representations as Yaya's legal counsel. (*Id.* at 4-5).

"[A] district court has inherent power to recognize, encourage, and when necessary, enforce settlement agreements reached by the parties." *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir.1994). Under Fifth Circuit precedent, the enforceability of a settlement agreement in a Title VII case is determined by reference to federal law. *Del Bosque v. AT & T Advert., L.P.*, 441 F. App'x 258, 260 (5th Cir. 2011); *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981). "Under federal law, a settlement agreement is a contract." *Lee v. Gulf Coast Blood Ctr.*, No. CV H-19-4315, 2020 WL 4700896, at *3 (S.D. Tex. Aug. 13, 2020). "A contract requires an offer, acceptance, and a meeting of the minds on all essential terms." *Simon*, 2018 WL 2010300, at *2. An "[a]cceptance of an offer occurs when there is manifestation of assent that occurs in any reasonable manner." *Id.* (internal quotation marks omitted). "A meeting of the minds on all essential terms of a

8

settlement agreement is generally present 'where the parties have agreed upon the monetary amount of the settlement payment and the fact that plaintiffs will release specific claims.'" *Id.* (quoting *In re Deepwater Horizon*, 786 F.3d at 357 n.26).

To determine if a settlement agreement is an enforceable contract, "the moving party must prove that the parties reached an agreement regarding all material terms." *Lozano v. Metro. Transit Auth. of Harris Cty.*, No. CV H-14-1297, 2016 WL 3906295, at *3 (S.D. Tex. July 19, 2016). "If the court finds that an agreement was reached, the non-moving party must prove that the agreement is tainted with invalidity and should not be enforced." *Id.*

"Federal law does not require a written, signed agreement." *Lee* 2020 WL 4700896, at *5. Once entered, a settlement agreement "cannot be repudiated by either party and will be summarily enforced." *Cia Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967). "If the parties' communications indicate that an agreement has been reached and there are no material terms outstanding to negotiate, the court can enforce a settlement agreement made orally or by email." *Lee*, 2020 WL 4700896 at *5. "[T]erms that arise when formalizing the release agreement that played no part in the parties' actual negotiations cannot be considered material." *Lozano*, 2016 WL 3906295 at *9. "A party who 'changes his mind when presented with the settlement documents ... remains bound by the terms of the agreement' if the parties agreed to all the material terms." *Lee*, 2020 WL 4700896 at *5 (citing *Fulgence*, 662 F.2d at 1209). "[C]ourts routinely enforce settlement agreements even where the precise wording of a release has not been finalized,"

9

and this "remains true even when one of the parties ultimately fails to sign the finalized release." *Deepwater Horizon*, 786 F.3d at 357 (internal citations omitted).

"In the Fifth Circuit, an attorney of record is presumed to have authority to compromise and settle litigation of his client." *Simon*, 2018 WL 2010300, at *3 (internal quotation marks omitted). "Indeed, where the plaintiff is represented in the settlement negotiations by his counsel of choice, the settlement agreement is presumptively informed, willing, and valid. … The party challenging the settlement has the burden to refute the presumption." *Id.* (internal citations and quotation marks omitted).

Here, as an initial matter, although Driscoll filed its motion to dismiss first and presents the motion for summary judgment as an alternative to that motion, in the interest of efficiency for both the Court and the parties, it is recommended that the Court consider the motion for summary judgment first. Even were the Court to consider the motion to dismiss and find that some or all of Yaya's claims should be dismissed, it would nonetheless be appropriate to offer Yaya the opportunity to file an amended complaint. *See Benavidez v. Nueces Cnty., Texas*, No. 2:21-CV-00194, 2022 WL 22846657, at *2 (S.D. Tex. June 23, 2022) (noting that, when a complaint fails to state a claim, a court should generally give leave to amend before dismissing the case with prejudice). Such a process is unnecessary if, as Driscoll argues, both parties are already bound by an enforceable agreement that resolves all of Yaya's claims.

Based on review of the submitted evidence and the arguments of the parties, the parties agreed to all necessary material terms to make a settlement agreement and

accordingly have an enforceable agreement. The undisputed evidence shows that the parties agreed to a settlement amount of $4,841.20 in return for Yaya releasing all claims against Driscoll. (D.E. 34-1 at 4-6). In the context of a settlement agreement, these are the necessary material terms to have formed an enforceable contract. *Simon*, 2018 WL 2010300 at *2. The parties also specifically discussed and agreed to other terms over email, including a neutral reference provision. (D.E. 34-1 at 5). This offer was clearly accepted by both parties, with Yaya's counsel stating that he, against their recommendation, had accepted the offer, and Driscoll's counsel confirming the agreement. (*Id.* at 4-5). Because the parties agreed on all material terms, Driscoll has met its burden to show that there was an enforceable contract. *Lozano*, 2016 WL 3906295 at *3. This agreement did not need to be reduced to writing to be enforceable under federal law, nor was the agreement being reduced to writing a condition precedent established by the parties. *Lee*, 2020 WL 4700896 at *5.

Yaya has not submitted any evidence to contradict the evidence provided by Driscoll. In his response, he makes the conclusory assertion that any agreement lacked consideration or was made under coercion, duress, or misrepresentation. (D.E. 38 at 7). However, he does not explain why this was the case or provide evidence to support these arguments. Further, although he has since parted ways with counsel and now represents himself, Yaya has not argued or presented any evidence that Koempel did not have the authority to make a settlement agreement on his behalf, and he therefore has not rebutted the presumption that his attorney had such authority. *Simon*, 2018 WL 2010300, at *3.

Further, in a separate section of his response, Yaya argues that Driscoll delayed responding to reasonable settlement requests, which is consistent with the email evidence showing that Koempel relayed several settlement values to Driscoll with no response. (D.E. 34-1 at 6-11, 13; D.E. 38 at 13).

Accordingly, the record shows that the parties had an enforceable settlement agreement including a $4,841.20 in return for Yaya releasing all claims against Driscoll, along with additional terms agreed to by the parties, including, at least, a neutral reference provision. (*Id.* at 4-5). It is recommended that the Court find that the parties had an enforceable settlement agreement and grant Driscoll's motion.

b.   *Attorney's Fees*

Driscoll further argues that it is entitled to attorney's fees under the Texas Civil Practice and Remedies Code, or alternatively due to Yaya's bad faith refusal to abide by a settlement agreement. (D.E. 34 at 7-9). Yaya does not address this argument in his response. (*See generally* D.E. 38).

"Although federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement agreements is governed by the principles of state law applicable to contracts generally." *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987) (quotation omitted). "Settlement agreements are governed by the law of contracts." *Schriver v. Tex. Dep't of Transp.*, 293 S.W.3d 846, 851 (Tex. App.—Fort Worth 2009, no pet.); *see also Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992) ("[a] settlement is

a contract."). Under Texas law, "when a prevailing party in a breach of contract suit seeks attorneys' fees, an award of reasonable fees is mandatory." *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 614 (5th Cir. 2000) (citing Tex. Civ. Prac. & Rem. Code § 38.001(8)). The Fifth Circuit has stated that, based on Texas law, "[t]he award of reasonable attorneys' fees is mandatory under § 38.001 if the plaintiff prevails in his or her breach of contract claim and recovers damages." *Coffel v. Stryker Corp.*, 284 F.3d 625, 640 (5th Cir. 2002) (citing *Kona Tech Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 603, 613 (5th Cir. 2000)).

Further, "[p]ursuant to its inherent power, a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Seals v. Herzing Inc.-New Orleans*, 482 Fed. App'x 893, 897 (5th Cir. 2012) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991)). Courts have found that reneging on a binding settlement agreement, along with opposing enforcement of that agreement with no factual basis in support, can represent bad faith. *See Procaccino v. Jeansonne*, No. CV 17-4748, 2017 WL 6733722, at *4 (E.D. La. Dec. 29, 2017).

Here, Driscoll has not established that it is entitled to attorney's fees under Texas law because, to be entitled to such fees, Driscoll must not only prevail on its contract claim but also recover damages. *Coffel*, 284 F.3d at 640. Although this memorandum recommends that Driscoll prevail on its contract claim, it does not recommend the award of any damages. Moreover, although it is within the Court's inherent power to award attorney's fees based on bad faith, it is recommended that fees not be awarded on that basis

13

here. *Seals*, 482 Fed. App'x at 897. Although the evidence shows that Yaya was subject to an enforceable settlement agreement, Driscoll has not established that his actions rise to the level of bad faith.

## IV.  RECOMMENDATION

Accordingly, it is recommended that Driscoll's motion for summary judgment (D.E. 34) be **GRANTED** but its request for an award of attorney's fees be **DENIED**, Driscoll's motion to dismiss (D.E. 31) be **DENIED as moot**, and Yaya's motion for summary judgment (D.E. 46) be **DENIED as moot**.

Respectfully submitted on August 29, 2025.

_____
Julie K. Hampton
United States Magistrate Judge

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).